Good morning everyone. First matter is Schneyder v. Smith. I would like to reserve two minutes for rebuttal. Time permitting, I plan to address both of the issues on appeal, but I'd like to start with absolute immunity. When this court heard this case previously on the plaintiff's appeal following the grant of our motion to dismiss, it declined to accept our argument with respect to absolute immunity, primarily because it characterized the prosecutor's conduct in this case as administrative rather than advocated. In light of the Supreme Court's subsequent decision in Goldstein, what- How does Goldstein help you? All Goldstein said is that some kinds of ministerial or administrative decisions are so tied to the judicial, the litigation process, the prosecutorial process, they can't be separated out. That's not this case. This is not the failure to turn over Brady information or Giglio information. This is an attorney who decided that she was going to determine by herself when, if ever, the person she had detained was going to be released. That's not the kind of decision that they're talking about in Goldstein. The first way that Goldstein helps us, Your Honor, and the first way that Goldstein changes the case is that it shows that the analysis is not quite as simple and straightforward as was put forth in the original decision in this case. One can no longer simply say that a prosecutor- Well, forget the original decision, and maybe you can adjust my question that I asked you. How does- What in Goldstein, the way they talk about the administrative duties of a prosecutor, what in that language or in that case helps you in this case? The central aspect of Goldstein that helps us is that it distinguishes between what I would call prosecutorial administrative duties and general office administrative duties. Administrative duties that merely happen to have been undertaken by a prosecutor, such as hiring employees, making payroll determinations, maintaining the physical facilities. So ignoring a judicial order is a prosecutorial- Well, I think that both parties in the district court agree that there are two components to what Goldstein says is what I'm characterizing as a prosecutorial administrative duty. One, it needs to be connected to the judicial process or to the prosecutor's trial advocacy duties, and two, there's a possible requirement that it involves legal knowledge in the exercise of related discretion. So why isn't it simply an administrative or a ministerial task to make certain that a person who is unjustifiably imprisoned gets released? I absolutely agree, Judge Smith, that it is an administrative task, but under Goldstein that doesn't end the analysis. If one considers what the tasks were in Goldstein, one of them was maintaining an information system. For what purpose? For what purpose? In plain English, what the court meant by that in Goldstein was they needed to maintain a list or computer database of informants who have received plea deals or favorable sentences. For what purpose? The ultimate purpose would be to make a decision at trial as to whether to turn over impeachment evidence, which could affect the prosecutor's advocacy in that he will now face impeachment evidence. Isn't a much more straightforward reading of Goldstein is that it simply extends to supervisors in a prosecutor's office the same immunity that the prosecutor under their supervision has when doing something intimately connected with the trial function? There's no question, Your Honor, that that's an aspect of Goldstein, but I don't concede by a long shot that that's the sole relevant aspect of Goldstein. Goldstein also shows that we can't simply carve out the prosecutor's duties to the administrative portion because that's what the plaintiff in Goldstein was trying to do. The plaintiff in Goldstein was trying to say, oh, I'm not talking about the prosecutor not turning over Brady or Giglio material at trial. What kind of administrative task could a prosecutor undertake that wouldn't be covered by absolute immunity? Administrative tasks that merely happened to have been undertaken by a prosecutor, much as judicial immunity would not apply simply to tasks such as hiring that merely happened to have been undertaken by a judge. But if the administrative task... Let's go back to Chief Judge McKay's question. I don't think a supervisor in a prosecutor's office would think disobeying a judge's order was an administrative responsibility. Well, if it's not an administrative responsibility, then in candor, I don't understand what the argument against absolute immunity is. Have you read Goldstein? Have you read the language of Goldstein? I certainly have, Your Honor. Have you read what they said about Imbler and Imbler's importance to the Nelson and Goldstein? Have you read that? Absolutely, Your Honor. Don't they talk about the problem with allowing prosecutors to get into a decision where they can't be concerned about personal liability as they go about exercising their prosecutorial functions? That's certainly one of the two. Isn't that exactly what we want here? Do we want to create a situation where a prosecutor can decide that she's beyond the reach of I'll decide to tell someone, I'll decide when and if I let the person out of, isn't that exactly the situation that the court suggests in Imbler would not be appropriate for absolute immunity? No, Your Honor. One of the concerns that the court expresses in both Goldstein and Imbler is that the prosecutor not be forced to stand trial for the normal activities of his job. Why? Why? Because otherwise it will dissuade people from serving as prosecutors. Otherwise litigants will be able to endlessly harass prosecutors. They don't say Imbler is serving as prosecutors. They talk about neutralizing the independent exercise of judgment on the part of the prosecutor. The person shouldn't be in a position where in order to perform their job, they have to worry about personal liability. That's what the court in Goldstein talked about. That's what Imbler talked about and that whole discussion in Imbler about Imbler in Goldstein, that was the first of it. And as I read it and I read it again this morning, it seems like this is exactly the kind of situation that the policy reasoning behind Imbler in Goldstein would mitigate against. Because you want to have prosecutors, I would hope you would agree, concerned about prosecutorial liability when they say something like, I'll decide when the person gets out of custody. Is that the kind of system you want us to erect? I think, Your Honor, that it's pretty clear that we read Goldstein differently. That I read Goldstein as having a second concern and that's with respect to the harassment of prosecutors, with respect to lawsuits. But maybe it would be helpful if I simply move. I didn't hear what you just said. I read Goldstein as? As involving two components. One is the one that Your Honor described. That is, we want prosecutors to be able to exercise free judgment and that's one of the rationales behind that. What judgment is there to exercise about obeying a judge's order? Well, certainly that brings us to a question, Judge Stearns, of whether there was a judicial order here to obey. Why isn't that a question? An issue of fact for the jury, not for me. Well, there's not really an issue of fact in that we have an order on the record and it's only the order on the record that controls what the prosecutor is bound to do. We have Judge Means' affidavit. We have Judge Means' affidavit as to what he said in Chambers, but Judge Means does not purport to say that the record of what his order was was somehow incomplete. The order speaks for itself. The order says that if there's a breakdown in the case and if the prosecution no longer needs you, let me know, Ms. Schneider, and I'll let you out. Now, certainly, the prosecutor has to interpret whether- Let's just work with that. Let's just go with that. Let that be the flow we'll go with. Help me understand. Okay. That's the order. If there's a breakdown in the case, I think the term was continuous, not a breakdown. If there's a continuous, let me know and I'll let her out. That's on the one hand. Then we have the prosecutor who, after at least the records would suggest that the family has tried to call the prosecutor 25 times, didn't reach her. They finally reach her and her response is, I'll decide when she gets out. Not the judge. She didn't say not the judge. I'll decide. Now, if you put that in context with the policy discussion of Imbler that was in Goldstein, my mind is boggled by the suggestion that we should write an opinion here that would say to prosecutors, you are absolutely immune if you take it upon yourself to detain someone in contravention of a statement or an order of a court. I still think we're begging the question of whether there was an order. Your Honor, the words on the record were not continuance. The words on the record were breakdown of the proceedings.  I explicitly, paragraph six of the affidavit, I explicitly place the onus on Ms. Smith to notify me if for any reason the Overby case was continued or broke. I'll absolutely concede that the judge means for purposes of this appeal said that in chambers. He did not say that on the record. We often have- So prosecutors are free to ignore whatever judges say in chambers and keep somebody in custody, even if they know in doing it, it's contrary to the judge's intent in authorizing the detention of someone who's not been charged with a crime. That's a far broader rule than I'm advocating for, Your Honor. It's often the case that judges will say things in chambers and then do something differently on the record once they've considered the case. I once had a case in which the judge told us that he was going to hold a colleague of mine in contempt of court if we didn't turn over certain discovery materials. But my colleague asserted executive privilege. We then had a hearing on the contempt motion or the contempt consideration since there was no motion. And the judge ultimately didn't hold my colleague in contempt. But you went to the judge for that decision. Your colleague just didn't decide, I'm going to ignore this. My point is that here, Judge Means says one thing in chambers, then he does something else on the record. It's what he does on the record that controls, not what he said in chambers. On the record, I'm not sure I agree with that, but on the record, he makes clear his queasiness at the idea of holding somebody for any extended period of time who's not charged with a crime. I don't think- I was a prosecutor for a number of years. I think I would have picked up on that signal. We all were. You're talking to Steve Brown, a prosecutor up here. I'm certainly not suggesting otherwise, but it's not a judge's queasiness that controls. It's a judge's order that controls. And I agree that it would be very unprofessional for a prosecutor to do something that he or she knows the judge doesn't want him or her to do. Well, wait a minute. Wait a minute. Let's go with that flow. Should we then allow for absolute immunity in a context where the attorney does something which is totally unprofessional? Unless we're going to say that, we're going to have to disregard the U.S. Supreme Court ruling that a prosecutor was accused of intentionally suppressing braiding material, intentionally subordinating perjury. What could be more unprofessional? You don't see a difference between braiding material and an attorney deciding to keep somebody in jail even though she knows- Of course I see a difference, but if you let me finish this question. I mean, I like the question, but it would be nice if you heard the question. I apologize, Your Honor. You don't think there's a difference between that and a prosecutor deciding on her own, taking it upon herself, in total disregard of what the judge told her in case that's an issue of fact, that the person's going to stay in jail until she, the prosecutor, decides otherwise? You don't think that's different than what you have in Imbler with a Brady decision? We were just discussing, Your Honor- You don't think that's different than what you have in Imbler with a Brady decision? I think that there are differences, but one can certainly imagine- Any material differences? Well, not necessarily, Your Honor. In Imbler, we could imagine that the judge had ordered the prosecutor to turn over certain witness statements. That wouldn't change the holding of Imbler, the fact that there was a judicial- No, because there's a legal obligation, and you get into whether or not the exercise of discretion is tied to the prosecutorial function. That's the whole underwriting purpose of Imbler in Goldstein. The latter part, that it's tied to a prosecutorial function, clearly securing witness testimony, however distastefully or unprofessionally the prosecutor might have done that, is related to a prosecutorial function. Well, then we don't need to have the protections of the Fourth Amendment at all. We can just decide that whenever a prosecutor decides it's in the best interest of his or her case to make sure a witness shows up for trial, the police go out and arrest that witness and hold the witness until the case is heard for trial. We can talk about budget reduction. We can get rid of all these judges who are clogging up the works and costing the taxpayers dollars by insisting on things like bail hearing. But let me jump in here, if I may, because I want to clarify something or attempt to that I think I just heard you say. I don't always find these terms of administrative and prosecutorial always helpful. And so I'm curious in this context as to what you mean, or more to the point, how you would define just what function Ms. Smith was serving here. What I heard you say a few minutes ago is a reference to securing the attendance of a witness, but surely you're not suggesting that because that is related to the prosecutorial, there are no bounds on that. A couple of components, if Your Honor simply wants me to characterize it. I'm comfortable with the characterization in the original opinion of this court that is complying with the judge's alleged order to provide continuance, but the purpose of that, of course, is to secure the attendance of a witness. Well, you're the one who's made the distinction, though, based upon Goldstein coming down and factual differences between the earlier opinion of this court and where we are now. So I'd like to hear you answer the question. I would, too. I'm certainly attempting to, Your Honor. Under Goldstein, it doesn't have to be the action that is advocated. It merely needs to be connected to an advocated action. And securing the witness testimony is the advocated action in this case. It's much as maintaining the list of informants in Goldstein was not itself advocated, it's administrative, but it relates to the prosecutorial's advocated functions. Well, here, though, the keys to the cell were given to the prosecutor. Let's assume your jurisdiction is correct. What if there'd been a second continuance? The case is now put off, which is not unheard of in a murder case, for another six months. Is there a point at which some violation of something occurs? That's what I was getting to. But, of course, Your Honor, yes, yes, to directly answer the question. But there can be a violation of the plaintiff's rights and yet absolute immunity. That's why absolute immunity exists. If the question were simply, did the prosecutor violate the plaintiff's rights, then what is the point of the absolute immunity doctrine? The absolute immunity doctrine clearly covers some conduct that violates the plaintiff's rights. Well, you're suggesting here that, yes, there was a violation of the person's rights, but that doesn't necessarily answer the question of absolute immunity? No, Your Honor. I was trying to answer Judge Stearns' question, which I took to be, could there be a point at which there is a violation of the plaintiff's rights? Well, how could there be? If your thesis is correct, how could there be? Because no matter when that point comes, the prosecutor is acting pursuant to her prosecutorial function of securing witnesses for a trial. 10, 15 years from now, she's still acting in that role. Even if we get to, well, yes, Your Honor, there can be a violation, but the fact that there's a violation. No, I'm not asking about a violation. I'm asking about how can you create a situation where, as you conceded at some point, well, I guess you're right, that is true, I'm wrong about that. You did say at some point there's a violation of her right, and you're saying that doesn't mean that there is a deprivation of immunity. That is what you're arguing. So if she keeps her in custody for 10 or 15 years, and that's a forward hypothetical, but you're saying there's still immunity because she's still performing the prosecutorial function. Yes, Your Honor, clearly when a prosecutor suborns perjury intentionally, he's violating the criminal defendant's rights. But the prosecutor, when he intentionally suborns perjury, is nevertheless entitled to the defense of absolute immunity. Let's use not hypothetical facts. Let's use the rather lengthy procedural history of this case, given the aborted nature of the prosecution at a number of stages. What if the detention of this witness had occurred the first time around, and the prosecutor had determined that she was in such need of this material witness that she chose to not report to the judge at any point throughout the various procedural stages of this case? It was, what, fourth trial, I think, wasn't it? Third, Your Honor. Would you justify that as being absolutely immune over such a period of time? I'm not entirely certain that I understand the question. Is it if the prosecutor never even- Perhaps I have been inarticulate, but I am simply trying to suggest that rather than creating a hypothetical of many years, let's use the time frame of the procedural history of this case with its various trials, retrials, etc. And it had been the first time around that this witness had been detained pursuant to an order, not, I think, in anticipation of the third trial. I think we need to be precise about what the right is. And here, the only right that's alleged is a violation of the Fourth Amendment's probable cause- Okay, well, I had hoped that we would get to that when we discussed qualified immunity, certainly. And I know you wanted to address those issues. Maybe it's the time to get to qualified immunity, which we'll have to reach if we don't accept your position on absolute immunity. If the court is willing to give me the time, my time is up. I'd like to just one more question on this, and I'll make it very succinct. How is it a prosecutorial function to detain anyone, whether a material witness or, I thought Coolidge versus New Hampshire said 50 years ago that this, as you remember in that regime, attorneys general have the power to issue arrest warrants on their own authority. I thought we decided that decades ago, but that is not a prosecutorial function. I am not aware of any precedent, nor has the plaintiff or the district court ever argued that detaining a material witness is not part of the prosecutorial function, because that, that I think pretty unambiguously is part of securing- Well, both in the statute I agree, but detaining is a prosecutorial function? Well, if we assume probable cause, then we're assuming that there's a reasonable probability that the witness won't appear unless she is detained.  That doesn't answer the question, is it the prosecutor's function to detain? Because here, that was what the prosecutor saw her role as. She decided, and she told, when she was finally, after the 25th call, reached, she said, I'll decide, basically, not exactly paraphrasing, I'll decide when the witness gets out. Is that a prosecutorial function? Yes, your honor, I would argue that detaining is a prosecutorial function. To detain, not to make application to a court to detain? You certainly can't find even any textual basis in the Pennsylvania rule of criminal procedure for the position you're taking, can you? You're right, your honor. The literal act of detaining is pretty clearly not a prosecutorial function, but I don't think that that's what we're talking about here. That's what she said she was doing. She said she was going to decide how long the witness would be detained. But in context, she's speaking with the plaintiff's family, so she means I, rather than the plaintiff's family, will decide whether she remains in jail. Not I, rather than the trial judge. That might be an issue of fact. That's not what she said. If the court wishes me to address qualified immunity. Why don't you give him another five minutes? Thank you, Judge McKee. The first issue is, of course, whether there was probable cause, because otherwise we don't need to get to the more sophisticated issue of whether the particular rule that the plaintiff is asserting was clearly established. And so the question is whether there were reasonable grounds to believe that the least restrictive means of ensuring Ms. Schneider's attendance at trial was to hold her in custody until the date of trial, whenever that might be. She had failed to appear at the first two trials. She had a pattern of disregarding all subpoenas and bench warrants. Well, there was probable cause to rest, but the problem I have, and my guess is we all have it, is the, to paraphrase one of my colleagues, the analytical context here, where if you look at Saussure with a violation of a right, assuming that there's in the 30 years probable cause to detain, is there any point at which some kind of protection creeps in to prevent the witness from being detained indefinitely based upon the original finding of probable cause? Is there any point along the continuum? Or does that mean that once a person is constitutionally detained, they can remain, and not sentenced now, but detained? Who's never been charged with a crime, they can remain detained forever. Is there any point in time at which something creeps in to say, wait a minute. Something's gotta happen. Periodic review is something's gotta occur. The witness can't be held in prison forever based upon the initial determination that it was okayed to detain her. And if I might just tack on to that, do we engage in that analysis looking at the Fourth Amendment or the Fourteenth Amendment? Those are both very good questions, Your Honor. And there would, if the court were to accept my qualified immunity argument, be a fight over due process upon remand. But the district court did not address that issue in the first instance. The district court only addressed probable cause under the Fourth Amendment. So to directly answer your question, Judge McKee, no, I don't believe that there would ever be a point at which the Fourth Amendment's probable cause requirement comes into play here after the initial detention and probable cause hearing. Due process has not yet been briefed before this court, and we've argued otherwise below. But certainly, the issue before the court right now is only limited to the Fourth Amendment's probable cause requirement. And so to say that that was fairly- Well, but absolutely, the question of qualified immunity is before us. And that's clearly been argued. I understand what you're saying, that you looked at qualified immunity through a Fourth Amendment lens, not a Fourteenth Amendment lens. But it seems that was the decision that was made in briefing the case. Well, the plaintiff has not prevailed on a theory of due process, which is why I haven't briefed it. It's not that I ignored the issue. It's that it's simply not the issue on which we lost. No, that's fair. As to probable cause, you would have to accept that there's this idea of continuing seizures, not just accept that the idea that there is continuing seizures for purposes of the Fourth Amendment's probable cause, but accept that that was clearly established at the time of misalleged conduct. The case that's relevant is Gallo, of course, which says that certain restrictions with respect to pretrial detainees can be sufficiently onerous as to implicate the Fourth Amendment. Gallo on its own says what it says. But we'll note that Gallo has been rejected by the Seventh and the Eighth Circuits, and that other circuits have said things that are inconsistent with Gallo. So the question, I think, becomes whether, when there is an express circuit split, can we say that anything is clearly established? Ms. Smith was not practicing in a jurisdiction that directly answers to the Third Circuit. From Ms. Smith's perspective, what the Seventh and Eighth Circuits have said about continuing seizures- Are you suggesting that the DA's office doesn't answer to the United States Constitution? It does, Your Honor, but the Seventh and Eighth Circuits have as much to say, and I don't mean this with any disrespect at all, about what the Constitution says as the Third Circuit does. Not in Philadelphia, they don't. Well, not in the Philadelphia Federal Courts, but certainly in the Philadelphia Common Police Courts, Seventh and Eighth Circuit precedent is as valid as Third Circuit precedent. So nothing- I'm sorry. Nothing can be clearly established when the circuits themselves disagree and the Supreme Court hasn't spoken. Let's assume that that's true, and I might be inclined to agree with you, but doesn't immunity, in a qualified sense, attach to discretionary conduct? If, as a matter of fact, it was believed that the judge did issue a clear order, report back to me, what is discretionary about the act that she then failed to undertake? To directly answer the first part of the question, yes, there is that requirement with respect to discretionary as opposed to ministerial functions for qualified immunity. We maintain our dispute with respect to whether there is an order. If there is an order, it certainly circumscribes the prosecutor's discretion. She still needs to determine how precisely to comply with the judge's order. And I know that that's not much discretion at all, and I'm not pretending otherwise. But you need a very minimal- You said how precisely to comply? Well, the prosecutor simply has to determine what reasonable compliance constitutes. And, Judge McKee, I can see that that's a very easy decision to make. But for purposes- You do what the judge told you to do. For purposes of the ministerial- I tell my kids when they say, why? Because I told you. It's very simple. You don't have to get into any analytical conundrum at all. You do what you're told to do. Well, absolutely, absolutely. You have to provide notice. But the ministerial function exception to qualified immunity is extremely narrow. It would have to tell the prosecutor precisely what you do, when, where, etc. Yeah, if the case is continued, let me know. Am I missing something here? I do think that to an extent, this is going to come down to how one reads the record and the order on the record as opposed to the affidavit about what was said off the record, as opposed to plaintiff's counsel's family's conversations off the record, etc. My time has expired, so unless there are further questions, thank you. Thank you, Mr. Cardin. May it please the Court, my name is Daniel Silverman, and I represent the appellee, Nicole Schneider, who is the plaintiff. Speaking for myself, if you can focus on the latter part of our discussion with Mr. Cardin, the qualified immunity. Here we have a situation where it's hard to say that she's been deprived of a constitutional right in the traditional construct of qualified immunity. I don't know how you can win, and if we're not in the traditional construct of qualified immunity, how can Ms. Smith possibly have fair notice of what she's doing and what the laws are? Doesn't she automatically get qualified immunity? The question may not be very clear, but you've got a judicial determination, okay, you can hold this person. Until February 2nd. Okay, there's no Fourth Amendment concern here. And if the issue comes down to a belief that at some point she's got to realize that you can't just hold the person in custody indefinitely based upon the original determination, especially given what Mr. Carr said about the other courts not looking at the Fourth Amendment the same way we do what we did under Gallo, of qualified immunity, how can you say she's on notice basically under Saussure? I think the court first has to recognize that there's a distinction between criminal defendants who have a hearing at which time probable cause is determined to detain that person. And at that point, the Fourth Amendment does sort of drop out of the picture, and additional protections that the Constitution affords come into the picture. I think we understand that. At the heart of this is, at least initially, trying to understand what the nature of the right is that's being asserted here. That's necessary for us to identify if we are to engage in meaningful qualified immunity. That this American citizen had the Fourth Amendment right not to be seized without reason. Well, that's not an issue here, is it? She was seized. Our problem is not the initial seizure. Our problem is her continued detention after that seizure. Professor, what we have here is a remedy in search of a right. Right, yeah, exactly right. And I'm submitting to the court that the right that exists here is the right of a citizen who gets initially physically seized on January 26th, and a judge issues an order that says, there's probable cause to detain you until February 2nd. And at that point, it's not as though that seizure turns into a detention for constitutional purposes as it would for a criminal defendant who has all of those other rights available to them. What is the right? Is it a liberty interest when the initial liberty interest has been constitutionally circumscribed? It's a continuing seizure, Your Honor. It's a seizure that took place on one day, and it continues. But you are describing the facts, Mr. Silverman. You're not responding to the last three questions asked by Judge McKee and me, which are, identify the right. If we write an opinion on this, as we undoubtedly will, and if we do not accept the district attorney's office position on absolute immunity, we have to get to the qualified immunity question. And if we get to that, we've got to identify the right. I mean, it's just a basic step in the analysis. So how do we do that? I'm proposing that the right is a Fourth Amendment right not to be seized on a continuing basis, unusably, without probable cause. How do you define continuing, and how would Ms. Smith possibly have been able to define that definition of continuing? Well, the way Ms. Smith could have defined that definition is that there was so much evidence in this case that would clue any prosecutor to understand that violating Judge Means' order was not reasonable. It was a violation of the law to do that. The violation of the right doesn't get you to a home base with qualified immunity. I don't think that the inquiry is whether Ms. Smith understood that Ms. Schneider had a right. I have to demonstrate to you that there's a right here, for sure, to overcome qualified immunity. But I don't think the inquiry should be looking at Ms. Smith and seeing what she was Ms. Schneider really doesn't have a right here so I can violate the court's order. I don't think that's where the inquiry should be. Now, that may not be her analysis, but that is our analysis. I understand that. We have to start with what is the right and then get into clearly established. Yeah, and on that latter point, the hypothetical prosecutor would have looked first to Graham versus Connor, and the Supreme Court would have told her, we haven't decided. When the Fourth Amendment right dissipates and pretrial detention begins and some other right attaches, presumably a Fourteenth Amendment due process right, she would look in this circuit then if there was guidance, she would find the Johnston case, and that would just simply tell us the same thing that Graham said, we don't know either. But that there's conflicting law in the circuits as to whether it's a continuing violation under the Fourth, whether there's any right at all. You're not adopting my bait about this perhaps not being a discretionary act at all. No, I was, the next thing I was going to say is it seems to me that's the precondition to any argument by Ms. Smith in this case of qualified immunity, that there's no discretion in this case. It's a requirement for qualified immunity that there be a discretionary act, and I think the panel has certainly demonstrated its awareness that this was not a discretionary act. I think to What if you have no discretion? The takeaway scenario is that what the prosecutor does is not pursuant to discretionary act. But nevertheless, the end result is not the violation of a constitutional right, then there's clearly no liability. Now, look, all the cases that are out there, all the cases that the prosecutor's office has cited in its brief all deal with criminal defendants. Frankly, I just, I read the Fourth Amendment the way a couple cases that I cited in my brief read the Fourth Amendment, that a material witness is in a different position than a criminal defendant. Well, that may be, but does that help you in the qualified immunity context? That all the cases, and pretty much all the cases out there, period, deal with criminal defendants, that we were all prosecutors. I was a State prosecutor, and after that a State court judge for four years. I have seen one material witness case in all of those years. Because prosecutors understand, unlike Ms. Smith, that you can't do what she did. That's why there are no cases out there. This is the outlier because of the outrageousness of what she did. But that may well be, but absent any cases out there, we still have to get the clearly established, and she's got to have known basically. I think what informs the Court's inquiry on that point is the State rule that applies, called detention of witnesses, Rule 522 under the State. I know that's not a, the constitutional right itself, but I think it informs the Court's analysis of whether there is a constitutional right. Rule 522 talks all about the continuing nature of this seizure, that a judge has the continuing opportunity to modify the terms of bail, that any party can continually come and apply to the Court for relief to modify the bail one way or the other. So that rule was in existence. That rule certainly provided enough notice to Ms. Smith to know that what she was doing was violating the law. Let me try this. In the one case I could find that was mildly in point was the Armstrong case in the days in jail without being taken before a judge. As I understood your earlier distinction, you're saying because there was never a meaningful probable cause hearing in this case, the Fourth Amendment right continued. In Armstrong, the Seventh Circuit was saying, we think substantive due process is implicated, got it, in a trial context. They found the right there, but you don't want to take us to substantive due process. The reason I don't want to go there is because I know that the D.A.'s office in this case has been actively urging me to go that way. So I know they've got something in store for me if the case gets remanded. Invited the error? Were you here yesterday? I was. I would just, on this last point, I would just urge the Court to recognize that this is perhaps a vacuum in the constitutional analysis. Well, it is. I think that's exactly right. But then the problem becomes, given, if we forget the absolute meaning, go to qualified immunity. If we are going to be the falling tree that makes the sound that obliterates the vacuum, we're landing on Ms. Smith and it may not be fair because I would, she would know, and it seems to me the response to that is common sense should tell you, as a prosecutor, you can't just indefinitely detain. The common sense is not the test I'm associated. I guess you, and I'm sure Mr. Carr can get what we're, at least what I am, struggling with, and that Judge Stearns is exactly right. It's, remedy may be there, but unless it's hitched to our right, it's a remedy that's not going to be remedied. I'm proposing that American citizens has the Fourth Amendment right not to be seized in the manner in which Ms. Schneider was seized in this case. And that it's not just... You used seize in the context of her continuing... Correct. ...detention. Correct. Seizure. Just to make it come within the literal ambit of the Fourth Amendment. But you ask any person on the street whether or not this was a reasonable or an unreasonable seizure, a hundred percent of them are going to say that it's unreasonable. Well, the problem, not initially, the initial seizure, a hundred of them, I don't know what the percentage would be. Most of them, especially if you recited the problems that they had trying the Oberby case, the threats that Ms. Schneider purportedly made to some of the officers who attempted to arrest her. Oh, there's clearly probable cause for a judge to determine that she was a flight risk. Okay. But there was no probable cause to detain her beyond February 2nd. Okay. And that's not just Judge Means' subjective ruling. It's... I'm not even sure I would use the term subjective. I think all three of the members of this panel would have ruled that there was no probable cause to detain her beyond February 2nd. The rule itself, Rule 522, says you can only detain a witness to ensure her appearance for court that's required. It was not required for her to be detained beyond February 2nd. Mr. Oberby could have pled guilty on February 5th or February 15th or March 15th. There certainly would have been no... The judge might have still kept her in custody beyond February 2nd. He might have thought, well, I know I said if the case is continued, I'm going to let her out. But we're talking about a two or three-day delay. Pre-sentence report is not in. A stenographer is not available on February 2nd to take a plea  Except all the evidence that... You don't want to say that, do you? You don't have to say that there was no evidence to justify. What you want to say is that she at least had a right to be heard on the question of whether there was any evidence. Because Judge Means actually said, I'm ordering that you be heard on this issue. And I think that's a clearly established right. When a judge says, I'm going to give you a hearing on this issue, you have the right to that hearing. That's clearly established for 225 years of American jurisprudence. Do you think it would be open for a... And I'm not demeaning it, I'm understanding it. You're saying that, all right, I'll concede that there was probable cause to detain her initially, but that probable cause evaporated in the context of the judge's order. Do you think it would be open to a jury to find that as a matter of fact that there was no probable cause under the Fourth Amendment to detain her after a certain point in time? Is that a fact issue or an issue of law? Well, I'm not sure. I certainly would go back down... But it's a sliding scale out over time. I would certainly... That's how they weasel away from hard questions. I would certainly propose to my trial judge that there be an instruction to the jury that there was no probable cause to detain beyond February 2nd in light of Judge Means's order to that effect. I have put probable cause to a jury in excessive force cases or wrongful detention. I'm just wondering if that would be the ruling. You said that if the judge says you're going to get a hearing on X date and it's right to a hearing, the judge could gratuitously decide to give a hearing even though there's no legal requirement that he or she do so. I don't know if that gives rise to... I guess it gives rise to a right of some sort.  I would also take issue with the defendant's framing of the qualified immunity question itself. They seem to say, is there a clearly established right to a second probable cause hearing? I don't think that's the issue. I think that's an overly narrow definition of the issue. It seems to me the proper question that everyone should be asking here is, did Ms. Schneider have a clearly established right to expect that a government official, like the prosecutor in this case or a police officer in some other case, has to come forward with information that is vital to the probable cause determination, especially when a court orders it. But we can just put that aside for a second. The cases I cited talk about police and prosecutors have to come forward when they come into new information that affects a probable cause determination, probable cause to arrest, probable cause to issue a search warrant. They have to come forward when there's a change in circumstances. But here the change in circumstances didn't really negate the probable cause. The reason the judge means allowed the witness to be arrested, that reason was still there even after the Overby case was continued. Judge means he still would have had grounds legally to detain her. Still the same risk of flight. Just that he had decided he wasn't going to do that, but he would have been... And that's the law of the case. The law of the case is there was no probable cause to detain her beyond February 2nd, the initial trial date. Because it's not, her appearance was not required. Judge McKee, there's clearly no dispute on my part that there was probable cause to believe that she was a flight risk generally. But that's just out there in a vacuum. When you put it into the... Did that flight risk negate itself after the continuous? The day after the case was continued, wasn't the flight risk exactly the same as it was when he initially arrested her? No, the key difference was that when initially arrested, there was a trial date five or six days later. On February 2nd, the trial got continued for three and a half... How does that change the nature of the risk or the degree of risk? Because it's not necessarily required that she be there on May 25th because of the likelihood, probability, possibility that Mr. Overby would have pled guilty or the case somehow dissipated some other way and Ms. Schneider's appearance was not required at all. What, are we going to keep a material witness in custody for three and a half months for a case that doesn't exist? Let me try, as I'm warming up to your Fourth Amendment theory. I think what you're saying is that there was certainly probable cause found, but the judge only found probable cause to hold her until a specific date. Absolutely. You're not contesting that had she come forward, brought the witness back in, he could have found probable cause to continue the detention. That's correct. Okay. Now, I follow you. Thank you. Okay, Mr. Fulman, thank you. Mr. Akari, you have some time, I think. Given the tenor of the Court's statements and questions, I would be inclined to rest on my initial argument unless there are further questions for me. Excellent. Thank you. Thank you, Mr. Akari. Thank you. Okay. We'll take the matter into advisement. It's a very, very difficult case, at least for me, a very troubling case. We'll take the matter